# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

| | | |
|---|---|---|
| EUGENIA ODORIZZI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 6:15-CV-03432-DGK-SSA |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER AFFIRMING THE COMMISSIONER'S DECISION

This action seeks judicial review of the Acting Commissioner of Social Security's ("the Commissioner") decision denying Plaintiff Eugenia Odorizzi's applications for Social Security disability insurance benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401–434, and Supplemental Security Income under Title XVI of the Act, 42 U.S.C. §§ 1381–1383f. The Administrative Law Judge ("ALJ") found Plaintiff had severe impairments of carpal tunnel syndrome, peripheral vascular disease, and obesity, but retained the residual functional capacity ("RFC") to perform work as a cashier or warehouse checker.

After carefully reviewing the record and the parties' arguments, the Court finds the ALJ's opinion is supported by substantial evidence on the record as a whole. The Commissioner's decision is AFFIRMED.

### Procedural and Factual Background

The complete facts and arguments are presented in the parties' briefs and are repeated here only to the extent necessary.

Plaintiff filed her applications on March 8, 2013, alleging a disability onset date of March 8, 2011. The Commissioner denied the applications at the initial claim level, and Plaintiff

appealed the denial to an ALJ. The ALJ held a hearing, and on August 12, 2014, issued a decision finding Plaintiff was not disabled. The Appeals Council denied Plaintiff's request for review on August 10, 2015, leaving the ALJ's decision as the Commissioner's final decision. Plaintiff has exhausted all administrative remedies and judicial review is now appropriate under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

## Standard of Review

A federal court's review of the Commissioner's decision to deny disability benefits is limited to determining whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Chaney v. Colvin*, 812 F.3d 672, 676 (8th Cir. 2016). Substantial evidence is less than a preponderance, but is enough evidence that a reasonable mind would find it sufficient to support the Commissioner's decision. *Id.* In making this assessment, the court considers evidence that detracts from the Commissioner's decision, as well as evidence that supports it. *Id.* The court must "defer heavily" to the Commissioner's findings and conclusions. *Wright v. Colvin*, 789 F.3d 847, 852 (8th Cir. 2015). The court may reverse the Commissioner's decision only if it falls outside of the available zone of choice; a decision is not outside this zone simply because the evidence also points to an alternate outcome. *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011).

## Discussion

The Commissioner follows a five-step sequential evaluation process[1] to determine whether a claimant is disabled, that is, unable to engage in any substantial gainful activity by

---

[1] "The five-step sequence involves determining whether (1) a claimant's work activity, if any, amounts to substantial gainful activity; (2) his impairments, alone or combined, are medically severe; (3) his severe impairments meet or medically equal a listed impairment; (4) his residual functional capacity precludes his past relevant work; and (5) his residual functional capacity permits an adjustment to any other work. The evaluation process ends if a determination of disabled or not disabled can be made at any step." *Kemp ex rel. Kemp v. Colvin*, 743 F.3d 630, 632 n.1 (8th Cir. 2014); *see* 20 C.F.R. §§ 404.1520(a)–(g). Through Step Four of the analysis the claimant bears the

reason of a medically determinable impairment that has lasted or can be expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A). Plaintiff argues the ALJ erred at step four in formulating her RFC because he: (1) improperly discounted her credibility; (2) improperly discounted the well-supported opinion of her treating physician; and (3) failed to support the RFC with substantial evidence.

These arguments are without merit.

### A. The ALJ properly analyzed Plaintiff's credibility.

Plaintiff argues the ALJ's credibility analysis was not rooted in the *Polaski* factors and was not supported by substantial evidence. Plaintiff claims the ALJ only gave three reasons for discounting Plaintiff's credibility—her conservative treatment, her daily activities, and her failure to stop smoking—and that each reason is invalid.

Credibility questions are "primarily for the ALJ to decide, not the courts." *Baldwin v. Barnhart*, 349 F.3d 549, 558 (8th Cir. 2003). When the ALJ discounts a claimant's credibility, he must explain why he did so. *Lowe v. Apfel*, 226 F.3d 969, 971 (8th Cir. 2000). "If an ALJ explicitly discredits the claimant's testimony and gives good reasons for doing so, the Court should defer to the ALJ's credibility determination." *Gregg v. Barnhart*, 354 F.3d 710, 713 (8th Cir. 2003). In evaluating a claimant's subjective complaints, the ALJ must consider the factors set forth in *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). These factors include the claimant's daily activities; the duration, frequency, and intensity of pain; the dosage, effectiveness, and side effects of medication; any precipitating and aggravating factors; any functional restrictions; the claimant's work history; and the absence of objective medical evidence to support the claimant's complaints. *See id.*; *see also* 20 C.F.R. §§ 404.1529, 416.929.

---

burden of showing that he is disabled. After the analysis reaches Step Five, the burden shifts to the Commissioner to show that there are other jobs in the economy that the claimant can perform. *King v. Astrue*, 564 F.3d 978, 979 n.2 (8th Cir. 2009).

However, an ALJ need not discuss, or even cite, every *Polaski* factor in his decision. *Buckner v. Astrue*, 646 F.3d 549, 558 (8th Cir. 2011).

To begin, the Court notes Plaintiff mischaracterizes the ALJ's opinion. He gave *seven* reasons, not three, for discounting Plaintiff's statements concerning the severity of her symptoms. These reasons were: (1) the lack of objective evidence in the record supporting Plaintiff's claims; (2) the conservative treatment she received for her allegedly disabling impairments; (3) her noncompliance with her treatment providers' recommendations; (4) that she stopped working for reasons unrelated to her health; (5) she had a poor work history with inconsistent, often low, earnings; (6) she worked some after her alleged onset date; and (7) her daily activities were inconsistent with disabling limitations. R. at 16. All of these are valid reasons to discount her credibility. *See Forte v. Barnhart*, 377 F.3d 892, 895 (8th Cir. 2004) (holding a lack of objective medical evidence is a proper factor to consider in assessing a claimant's credibility); *Moore v. Astrue*, 572 F.3d 520, 524-25 (8th Cir. 2009) (holding the ALJ properly considered Plaintiff's conservative treatment in discounting her claim of disabling back pain); *Gowell v. Apfel*, 242 F.3d 793, 797 (8th Cir. 2001) (holding the claimant's failure to follow a recommended course of treatment weighs against the claimant's credibility); *Goff v. Barnhart*, 421 F.3d 785, 793 (8th Cir. 2005) (finding whether a claimant stopped working for reasons unrelated to her medical condition is relevant to her credibility); *Toland v. Colvin*, 761 F.3d 931, 936 (8th Cir. 2014) (seeking work and working are activities inconsistent with claims of disability); and *Medhaug v. Astrue*, 578 F.3d 805, 817 (8th Cir. 2009) (holding "acts such as cooking, vacuuming, washing dishes, doing laundry, shopping, driving, and walking, are inconsistent with subjective complaints of disabling pain"). And Plaintiff does not dispute four of these reasons.

In any event, all of these reasons are supported by the record. For example, Plaintiff argues the ALJ erred in finding objective medical evidence does not support her claim of disabling limitations. But despite Plaintiff's testimony at the hearing that her back would "go out" and that she would be "down for two weeks," an X-ray of her back showed only mild degenerative changes. R. at 46, 437. And although Plaintiff exhibited tenderness after she twisted her back when bowling, R. at 14, 424, she generally did not exhibit significant or persistent muscle spasm, significant gait disturbance, or significantly reduced range of motion of the lumbar spine. R. at 14, 226, 238, 377–79, 404, 422–23, 477, 491.

Also, Plaintiff testified that her carpal tunnel syndrome prevented her from working. R. at 47. But doctors found she generally moved all extremities equally; exhibited normal upper extremity and grip strength; extended her hands fully; made fists; opposed her fingers; and had normal fine motor skills, including writing, buttoning, unbuttoning, zipping, gripping, grasping, shaking hands, and turning door handles and knobs. R. at 226, 376–78, 477, 486. Thus, it was reasonable for the ALJ to find the objective medical evidence did not support her claims, and so to discount her credibility.

There is also no merit to Plaintiff's contention that the ALJ failed to adequately discuss the *Polaski* factors. The ALJ discussed thoroughly most of these factors, R. at 15-18, and he was not required to discuss them all. *See Buckner v. Astrue*, 646 F.3d at 558.

In sum, because the ALJ gave good reasons for discrediting Plaintiff's testimony, the Court may not disturb this finding. *See Gregg*, 354 F.3d at 713.

### B.  The ALJ properly weighed the treating physician's opinion.

Plaintiff also argues the ALJ erred by not giving greater weight to the opinion of her treating physician, Dr. Ronald Glas, M.D. ("Dr. Glas"). Dr. Glas completed three medical

5
Case 6:15-cv-03432-DGK   Document 13   Filed 12/06/16   Page 5 of 8

source statements for Plaintiff, each stating she could not complete an eight-hour workday or a forty-hour workweek.  R. at 17-18, 473-74, 497-99, 501-04.

The ALJ must assign controlling weight to a treating physician's opinion if it is well-supported and consistent with other evidence in the record.  20 C.F.R §§ 404.1527(c)(2), 416.927(c)(2).  In evaluating a medical opinion, the ALJ should consider the length, frequency, nature, and extent of the treatment relationship, supportability, consistency with the record as a whole, specialization of the treating source, and other factors supporting or contradicting the opinion. *Id.*  If an ALJ discounts a treating physician's opinion, he must give "good reasons" for doing so.  *Dolph v. Barnhart*, 308 F.3d 876, 878-79 (8th Cir. 2002).

The ALJ did so here.  After weighing the relevant factors, he articulated five good reasons for discounting Dr. Glas's statements.  He found the statements were inconsistent with: (1) the record as a whole, including Dr. Glas's own notes; (2) Dr. Glas's conservative treatment of Plaintiff; (3) the fact that Plaintiff's treatment providers did not recommend any permanent restrictions on her activities; (4) Plaintiff's compliance issues; and (5) Plaintiff's ability to engage in extensive activities of daily living.  R. at 18.  And these reasons are supported by the record.

Take, for example, Dr. Glas's opinion that Plaintiff could not sit for more than four hours in an eight-hour workday.  R. at 473-74, 497-99.  As a threshold matter, nowhere in the record is there any report that Plaintiff had difficulty sitting for more than four hours in a day, leaving one to wonder how Dr. Glas came to this conclusion.  Regardless of how he formed this opinion, it is inconsistent with Plaintiff's conservative course of treatment.  R. at 16.  As the ALJ noted, Plaintiff's treatment consisted predominantly of routine follow-up appointments and medication management; she did not require aggressive care, surgery, or even physical therapy.  R. at 16, 45–47.

Further, neither Dr. Glas nor any other treatment provider instructed Plaintiff to limit the amount of time she stood or walked during the day. On the contrary, all of Plaintiff's treatment providers encouraged her to walk, remain mobile, and increase her exercise level. R. at 281, 375, 507. This permitted the ALJ to discount Dr. Glas's opinion. *See Avouris v. Colvin*, No. 4:11CV1793 FRB, 2013 WL 4436210, at *11 (E.D. Mo. Aug. 16, 2013) (ALJ properly found that a treating doctor's assessment was inconsistent with his own treatment notes because the notes did not limit her activity in the extreme manner described in the assessment).

Dr. Glas's opinion was also inconsistent with Plaintiff's self-reported daily activities. Plaintiff lived by herself, performed household chores, prepared simple meals, shopped, managed her finances, socialized with others, played cards, used a cellphone for texting, played computer games, went bowling, and watched her grandchildren. R. at 16, 32, 51–52, 176, 185–88, 424. Plaintiff's participation in these activities indicated she was not as limited as Dr. Glas claimed. *See Ellis v. Barnhart*, 392 F.3d 988, 995 (8th Cir. 2005) (the ALJ properly considered the claimant's daily activities when discounting physician's opinion of claimant's limitations).

Consequently, the Court cannot hold the ALJ erred in discounting Dr. Glas's opinion.

**C.    The ALJ's RFC determination is supported by substantial evidence on the record.**

Finally, there is no merit to Plaintiff's claim that the ALJ failed to support the RFC with substantial evidence. As a threshold matter, it is the claimant's burden to prove his RFC, not the Commissioner's. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). The RFC is not based on a claimant's allegations; rather, it is based on the combined effects of all of the claimant's *credible* limitations. 20 C.F.R. §§ 404.1545, 416.945. In making this determination, the ALJ considers a host of factors, including the claimant's medical history, medical signs and laboratory findings, effects of treatment, reports of daily activities, lay evidence, recorded

7

Case 6:15-cv-03432-DGK   Document 13   Filed 12/06/16   Page 7 of 8

observations, medical source statements, effects of symptoms, and attempts to work.  SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996).

The ALJ did just that here, devoting more than three and a half pages of his opinion to carefully sorting through the evidence and weighing these factors, incorporating those limitations supported by the record.  As discussed above, the ALJ found no evidence supporting a limitation that Plaintiff could sit for no more than four hours a day, and so did not incorporate one.  R. at 15-16.  On the other hand, the ALJ recognized that Plaintiff's peripheral vascular disease in her left leg was a severe impairment that imposed significant work-related limitations. R. at 13.  To account for those limitations, the ALJ limited Plaintiff to light work and included a sit/stand option so that Plaintiff could change positions to relieve her leg pain, and he also limited the frequency that Plaintiff could be expected to push or pull with her left leg.  R. at 15.  This decision was supported by the record, consequently the ALJ did not err in determining her RFC.

## Conclusion

For the reasons discussed above, the Commissioner's decision is AFFIRMED.

**IT IS SO ORDERED.**

Date:   December 6, 2016              /s/ Greg Kays
                                      GREG KAYS, CHIEF JUDGE
                                      UNITED STATES DISTRICT COURT